Pearson, O. J.
 

 If, in addition to the metes and bounds, it had been set out in the grant, as a part of the description “ including a part of Moses Addington’s field,” an interesting question would have been presented. It is settled that a line of marked trees, or a tree marked as a corner, although not called for in the grant, or any natural object called for in the grant, which can be identified, and has
 
 sufficient ces'tainty
 
 to furnish of itself a description in place of the course and distances set out in the grant, will be allowed the effect of contradicting the course and distance so as to make the line longer or shorter ; or even to locate the land
 
 north
 
 of the beginning instead of
 
 south
 
 of it; on the ground that, in regard to course and distance, there is a greater liability to mistake, as by writing “ north ” instead of “ south ” or “ east ” instead “ west ” than in regard to natural objects called for, or to line trees or corner trees marked at the time of the survey, although not called for in the grant. This rule, in respect to questions of boundary, presupposes that the description which is to control, and be put in the place of course and distance has, of itself, sufficient certainty to locate the land, supposing the “ course and distance ” which it controls and contradicts, to be stricken out of the grant.
 

 In our case the natural object, if it can be so termed, is “ a
 
 *585
 
 part of Moses Addington’s field.” Strike out the course and we have, in place of it, “ including a part of Moses Adding-ton’s field.” "What part? So the description is too uncertain to stand alone, and for that reason, cannot, on the authority of any adjudicated case, be substituted for, or be allowed the effect of striking out the word “south ” set out in the grant as the course of the line from the second corner.
 

 So it would seem, that if it had been set out in the grant, as a part of the description that the tract of land in question, “ included a part of Moses Addington’s field,” it would not have controlled the conrse of the second line, so as to make it run
 
 north
 
 instead of
 
 south.
 
 But no reference to Moses Addington’s field is made in the grant, and the naked question is, are the field notes of a surveyor, filed in the office of the Secretary of State, admissible as evidence to contradict the course set out in the grant and locate the land on the
 
 north
 
 instead of the
 
 south
 
 side of the first line, the location of which is agreed on.
 

 If the Cherokee land (as it is called) had been regularly surveyed by authority of law, and marked off into districts, sections, half sections, and quarter sections, as is done under the law of the United States in regard to the land in the territories, the field notes of the surveyor would have commended themselves to more consideration. But no order of time, or form, or quantity, seems to have been observed. We have in the plat made by order, in the case, survey No. 66 and No. 67, made in 1820 ; No. 122 and 121 made in 1827 ; No. in 1837 ; and a survey for Moses Addington’s entry in 1812 ; and all of them, in regard to form and quantity, differing as widely as circumstances or caprice could have suggested.
 

 We therefore, concur with his Honor, who tried the case in the court below, that the “ field notes ” of the surveyor, which, it would seem, were originally made and filed in the office of the Secretary of State, as a kind of general map or description of the land which the commissioners were to sell, but which, by reason of the very many acts of the Assembly, in regard to the sale of the Cherokee lands, were superceded
 
 *586
 
 and disregarded, so that the tracts actually sold and conveyed by grant, are not at all identical with those originally surveyed, ought not, under any principle of law, or under the authority of any adjudicated case in our court, to have been, received as evidence, for the purpose of contradicting the calls of the grant, and, in thus substituting “ north ” instead of “ south.”
 

 We see no error in the charge of his Honor, that the deposition of Mr. Henry should not influence the verdict, for the reason, that it was an attempt, by parol evidence, to contradict and control the calls of a grant by the evidence of one who did not make the original survey, hut acted under the employment of a private individual and not under the direction, and by the employment of the commissioner appointed for and on behalf of the State.
 

 We think, upon the whole evidence,, that the fact that his Honor submitted to the jury to find' “ whether-there were any marked lines upon the tract in question, and if'there were any marked lines, that would control courses and distances,” was fully as much as the plaintiff had: a right to ask for, and. consequently he has no ground to complain of the- charge. There-is no error.
 

 Pur Curiam,
 

 Judgment affirmed.