FINCANNON v. SUDDERTH.

(Filed December 12, 1905).

*Deeds—Descriptions—Rules of Construction.*

1. Where the lines or corners of an adjoining tract are called for in a deed or patent, the lines shall· be extended to them without regard to distance, provided these lines and corners be sufficiently established, and that no other departure be permitted from the words of the patent or deed, than such as necessity enforces or a true construction renders necessary.

2. Under the above rule, the words in a deed, "being a corner of a tract owned by S, and known as the J tract, and runs west with the line of the S tract 228 poles to a stake in the old D line," control the other contradictory calls for a "rock," etc., there being no evidence as to how the rock came to be at the point or how · long it had been there.

3. The rule that whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the deed shall hold accordingly, notwithstanding a mistaken description of the land in the deed, presupposes that the deed is made in pursuance of the survey, and that the line was marked and the corner that was made in making the survey was adopted and acted upon in making the deed.

ACTION by W. A. Fincannon and others against Ed. Sudderth and wife, heard by *Judge W. A. Allen* and a jury, at the August Term, 1905, of the Superior Court of BURKE.

Plaintiffs claim the *locus in quo* under deeds from their father, Isaac Fincannon, executed in 1887 for the purpose of making a division of his lands. They alleged that defendants had trespassed thereon. Defendants denied plaintiffs' title. For the purpose of fixing their boundaries, plaintiffs introduced a grant issued 1794 to John Hughes, in which the call for the southwest corner is a small post oak—running thence east, etc. This is indicated on the plat so—"L. P. O." They introduced a deed from C. A. Cilley, commissioner,

FINCANNON *v.* SUDDERTH.

appointed in a proceeding instituted for the purpose of partitioning the lands of John Sudderth to B. A. Berry, bearing date March 25, 1882, describing the land conveyed as a part of the John Hughes grant. They next introduced a proceeding for the partition of the lands of B. A. Berry, and a deed from the commissioners to Mrs. Sudderth, calling for "a post oak and running east with Cannon's line 158 poles to a small pine," etc.

They introduced a deed from B. A. Berry to Isaac Fincannon dated 1876—a deed from Dean to Berry dated 1871. These deeds call for "a rock near a small branch and 22 poles north of the railroad, being a corner of a tract of land owned by the heirs of S. A. Sudderth, deceased, and known as the Johnson tract, and runs west with the line of the Sudderth tract 228 poles to a stake in the old Jonathan Duckworth line," etc. They introduced three deeds executed April 21, 1887, from Isaac Fincannon to each of the plaintiffs, all calling for the Berry line, as the northern boundary. Plaintiffs introduced one Hudson, who testified that he had seen line run from the post oak. It had been pointed out as John Sudderth corner. He looked at it—three marks on it—letters "J. S." on west side. Had never seen land run from rock. Mr. Denton testified that he run Sudderth land by Cilley deed. Began at post oak and run east—old marked line—thickly marked—found pointers at end of line. There was testimony that Berry said the post oak was his corner. Defendant introduced Mr. Huffham, who testified that he surveyed the land when Berry conveyed to Fincannon for the purpose of making deed. "Begun center of railroad—run north to rock, understood it to be corner of S. A. Sudderth's tract and Hughes grant—also known as Johnson tract, rock there. Begun at E, then to G, at Duckwell's line—then to I—then to J from E to G, known as line of Sudderth tract—was marked then and now. At G pointers. Do not think I marked line. Marked line from G to I. Never heard of

line from P. O. till this suit,". etc.   There was evidence tend-
ing to show that Fincannon had been in possession of land
to line from post oak east for many years.   Plaintiffs insisted
that their northern boundary was the southern boundary of
Berry line—from post oak east.   That the call for rock was
a mistake, and that the controlling call was for Sudderth-
Johnson land.   They requested His Honor to instruct the
jury: "The calls in the deed under which plaintiffs claim are:
Beginning on a rock near a small branch and 22 poles north
of the railroad, the same being a corner of a tract of land
owned by the heirs of S. A. Sudderth, deceased, or the heirs
of John Sudderth, deceased, and known as the Johnson
tract, and runs west with the line of Sudderth tract 228 poles
to a stake in the old John Duckworth line, and the court
charges you that if the jury can find and fix the line of the
tract so called for, and if it was marked or defined at the
time the plaintiffs' deed was executed, that the calls of the
plaintiffs' deed would be controlled by the call for the Sud-
derth or Johnson tract, and would go to and run with it to the
old Jonathan Duckworth line, if the Jonathan Duckworth
line can be located, and this would fix the boundary of the
plaintiffs' land."   His Honor declined this instruction and
intimated that he would charge the jury that if they found
from the evidence that at the time of the execution and
delivery of the deeds under which plaintiffs claim there was
a contemporaneous survey of the lands conveyed thereby for
the purpose of locating the lines and boundaries thereof and
the line was located and run with the line E G, and that it
was the intention of the grantor and grantees that it should
run with the red line, then said line would be the boundary of
the plaintiffs' land, notwithstanding the calls in said deeds."
Plaintiffs excepted, submitted to judgment of nonsuit and
appealed.

*J. T. Perkins* for the plaintiffs.
*Avery & Ervin* for the defendants.

CONNOR, J., after stating the case: The sole question presented by the plaintiffs' exception to His Honor's ruling is whether, by a proper construction of the deed from Berry to Isaac Fincannon, the call for the Sudderth-Johnson tract shall control the other calls, thus making the southern boundary of that tract their northern boundary. The third rule for construing the language used in deeds in respect to boundary laid down by *Chief Justice Taylor* in *Cherry v. Slade,* 7 N. C., 90, is: "Where the lines or corners of an adjoining tract are called for in a deed or patent, the lines shall be extended to them without regard to distance, provided these lines and corners be sufficiently established and that no other departure be permitted from the words of the patent or deed, than such as necessity enforces or a true construction renders necessary." The reason of the rule is stated with his usual clearness by the learned *Chief Justice.* This is the leading case on the question of boundary in our reports and has been uniformly followed, the last case in which it is discussed being *Hill v. Dalton,* at this term. Applying the rule to the deed in question, we would hold that the words "being a corner of a tract of land owned by the heirs of S. A. Sudderth and known as the Johnson tract, and runs west with the line of the Sudderth tract 228 poles to a stake in the old Jonathan Duckworth line," would control the other calls when contradictory. The defendants, however, contend that another rule should be invoked and applied by which the call for the "rock," followed by the other calls running therefrom, shall control and thereby discard the call for the Sudderth-Johnson land.

In *Cherry v. Slade, supra,* the rule is thus stated: "Whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land in the deed or patent." It was this rule which His Honor intimated he

would instruct the jury to apply in locating plaintiffs' deed. There can be no question that this court has frequently approved and applied it. The last instance in which it was discussed and the cases in which it was applied reviewed, is in a well considered opinion by *Mr. Justice Douglas* in *Elliott v. Jefferson,* 133 N. C., 207. We could add nothing to the exhaustive and satisfactory review of the authorities in that case. Quoting the language used in *Safret v. Hartman,* 50 N. C., 185, he says: "This rule presupposes that the patent or deed is made in pursuance of the survey, and that the line was marked and the corner that was made in making the survey was adopted and acted upon in making the patent or deed, and therefore permits such line and corner to control the patent or deed, although they are not called for, and do not make a part of it." The plaintiffs insist that there is no evidence tending to show that at the time of, and with a view to the making of the deed by Berry, or at any other time, the line contended for by defendants was surveyed and marked and corner marked. The only witness introduced by defendants was Mr. Huffham, who says that he surveyed the land and understood the rock to be the corner of S. A. Sudderth's land and Hughes' grant—also known as Johnson tract, he found marks but did not mark line. It is evident that he supposed that he was on Sudderth line. This testimony does not bring the case within the rule which defendants invoke. It is evident from the other testimony that Fincannon's northern boundary was regarded and treated as the Sudderth line. The evidence appears to be conclusive that the post oak is the beginning point in the Sudderth-Johnson line, being the same as the Hughes grant, and that Berry claimed it as his corner. After his death the same line was recognized by his representatives, the deed made by the commissioners in the proceeding for partition, calling for "a post oak and running east with Cannon's (which we understand to be Fincannon's) line." There is no evidence as to

how the rock came to be at the point found by Huffham, or how long it had been there. It is much more probable that a mistake was made in locating the rock than that the parties intended to depart from the old marked Sudderth line. It was in evidence that Fincannon had been in possession to the Sudderth line for thirty-five years, and that Berry never cut wood south of that line. There is no serious controversy in respect to the law. We think His Honor gave undue weight and force to Mr. Huffham's testimony. It does not bring the case within the principle upon which defendant's contention must rest. The plaintiffs were entitled to the instructions for which they prayed. The judgment of nonsuit must be stricken out and a new trial had. It is so ordered.

New Trial.